# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES W. SCHADE, | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 13-1071 |
| v. | ) ) ) | United States Magistrate Judge Cynthia Reed Eddy[1] |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**I.  Introduction**

Plaintiff James W. Schade brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). *See* 42 U.S.C. §§ 401-434, 1381-1383(f). The parties have submitted cross motions for summary judgment and the record has been fully developed at the administrative proceedings. For the following reasons, Plaintiff's Motion for Summary Judgment (ECF No. 7) will be denied. The Commissioner's Motion for Summary Judgment (ECF No. 9) will be granted and the administrative decision of the Commissioner will be affirmed.

**II.  Procedural History**

Plaintiff protectively filed for DIB on August 26, 2010 and filed for SSI on September 17, 2010, alleging onset of disability on November 1, 2009. (R. at 34, 150-165).[2] The

---
[1] By consent of the parties, (ECF Nos. 11, 12), pursuant to 28 U.S.C. § 636(c), the Federal Magistrate Judges Act, the undersigned has full "authority over dispositive motions…and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D.Pa. 2007).

1

applications were denied by the state agency on November 9, 2010. (R. at. 85-94). Plaintiff responded on December 27, 2010, by filing a timely request for an administrative hearing. (R. at 95-96). On October 6, 2011, an administrative hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge ("ALJ") Lawrence J. Neary. (R. at 29-69). Plaintiff, who was represented by counsel, appeared and testified. (*Id.*). Additionally, Plaintiff's wife, Lisa Schade, and an impartial vocational expert, Timothy Mahler, testified at the hearing. (R. at 58-69).

In a decision dated January 11, 2012, the ALJ determined that Plaintiff was not "disabled" within the meaning of the Act since Plaintiff's alleged onset of disability, so his claims for disability benefits were denied. (R. at 14-24). The Appeals Council denied Plaintiff's request for review on June 7, 2013, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1-6).

Plaintiff commenced the present action on July 23, 2013, seeking judicial review of the Commissioner's decision. (ECF No. 1). Plaintiff and the Commissioner filed cross-motions for summary judgment on November 1, 2013 and December 16, 2013, respectively. (ECF Nos. 7, 9). These motions are the subject of this memorandum opinion.

### III. Statement of Facts

### A. Background

Plaintiff was born on October 7, 1970 and was forty years of age at the time of the administrative hearing. (R. at 14, 34). Plaintiff graduated from high school and went to college for two years. (R. at 36). Previously, Plaintiff worked as an air traffic controller, driver for an ice company, and pressure washer. (R. at 36, 186). After two years of working as a pressure washer, Plaintiff started his own pressure washing company. (R. at 37, 186). At the time of the

---

[2] Citations to ECF Nos. 6-2-9, the Record, *hereinafter*, "R. at __."

hearing, Plaintiff was still working at his pressure washing company three to four times per week.[3] (R. at 37).

**B.      Medical History**

On December 28, 2009, Plaintiff went to the Emergency Room, stating he had "body aches throughout all [of his] body" and that all of his joints were painful. (R. at 242). Plaintiff reported that his pain was a ten out of ten. (*Id.*). The medical records indicate an impression of arthritis and Crohn's disease. (R. at 240).

In April 2010, Plaintiff had a colonoscopy with biopsies performed by gastroenterologist Rupam Sharan, M.D., which suggested Plaintiff had "mildly active ulcerative colitis" and "longstanding ulcerative pancolitis."[4] (R. at 255). In June 2010, Dr. Sharan's medical notes reveal that Plaintiff had "been advised multiple times by multiple physicians to start Humira."[5] (R. at 247). Plaintiff also treated with Rohit Aggarwal, M.D., at the UPMC Arthritis and Autoimmunity Center from May 2010 to October 2010. (R. at 313-333). After being urged by his treating physicians, Plaintiff began taking Humira in July 2010, which resulted in "definite improvement" in Plaintiff's synovitis. (R. at 328). Dr. Aggarwal observed that Humira improved Plaintiff's range of motion in his right shoulder. (R. at 330). Further, the medical records provide that Humira had "significantly improved" Plaintiff's ulcerative colitis,

---

[3] Plaintiff emphasized that while he worked three to four times per week, he had a helper that "does everything," including driving and washing the trucks. (R. at 37-38). Plaintiff stated that he would "just stand there and watch him" or sit in the back of the truck when he could no longer stand. (*Id.*).
[4] At an appointment on April 14, 2010, Plaintiff reported that he "continues to have 6-7 bloody, watery bowel movements, including nocturnal symptoms and urgency." (R. at 249). On May 5, 2010, Plaintiff reported to Dr. Sharan that "he continues to have 1-2 soft, nonbloody bowel movements daily." (R. at 248).
[5] Plaintiff's primary care physician, Mark C. Grotton, D.O., stated that Plaintiff "needs" Humira. (R. at 247). Dr. Grotton regularly examined Plaintiff from February 2008 through September 2011. (R. at 259-290, 354-369). Plaintiff had appointments with Dr. Grotton, usually on a monthly basis, in order to get refills for his pain medication prescriptions. (*Id.*).

alleviating his diarrhea.[6] (R. at 328). Dr. Aggarwal stated that Plaintiff had "improved clinically after starting [H]umira although [Plaintiff] reports worsening in joint pains." (R. at 330).

On September 27, 2010, Plaintiff treated with Lindsay Groves, Psy.D., for the first and only time. (R. at 373). Dr. Groves examined Plaintiff for forty-five minutes and filled out a mental impairment questionnaire that was provided by Plaintiff's counsel. (R. at 370-381). Dr. Groves found that Plaintiff met the following Social Security Listings of Impairments: Affective Disorders, Anxiety Related Disorders, and Substance Addiction Disorder. (R. at 373). In response to a question asking whether "given the claimant's above impairments and/or deficits, could he/she engage in in [sic] employment on a regular, sustained, competitive and productive basis," Dr. Groves answered "not at this time." (*Id.*).

## IV. Administrative Decision

On January 11, 2012, the ALJ issued a written decision, finding that Plaintiff had not been under a disability within the meaning of the Act since his alleged onset of disability, November 1, 2009. (R. at 14). The ALJ found that Plaintiff had engaged in substantial gainful activity since his alleged onset of disability because Plaintiff had earnings of $15,654 in 2010 and worked three days per week for three hours each time.[7] (R. at 16, 169). Nonetheless, the ALJ continued his analysis through Step 5 of the evaluation process. (R. at 16). After reviewing the medical record, the ALJ concluded that Plaintiff had the following severe impairments:

---

[6] When Plaintiff initially treated with Dr. Aggarwal on May 26, 2010, Plaintiff's ulcerative colitis was "still active as he [was] getting 5-6 diarrhea a day, although no blood." (R. at 316). Plaintiff started Humira in July 2010, and on August 25, 2010, Dr. Aggarwal noted that Humira had "significantly improved" Plaintiff's ulcerative colitis, but it was "still active as he [was] getting 3-4 diarrhea a day, only mild intermittent blood." (R. at 323). On October 6, 2010, Dr. Aggarwal recorded that Plaintiff's ulcerative colitis was "significantly improved since starting [H]umira and no diarrhea now." (R. at 328).

[7] In the ALJ's decision, the heading for this section states that Plaintiff has *not* engaged in substantial gainful activity since November 1, 2009. However, in his explanation underneath this heading, the ALJ clearly concludes that Plaintiff has engaged in substantial gainful activity since that date. As neither party has argued that the ALJ erred with respect to this finding, the Court will interpret this finding mean that the ALJ concluded Plaintiff's work after his alleged onset of disability amounted to the level of substantial gainful activity.

seronegative spondyloarthritis, ulcerative colitis, and psoriasis. (R. at 16-18). The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (R. at 18). The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 419.967(b) except he is limited to lifting and carrying 10 pounds frequently and 10 pounds occasionally; is limited to standing and walking for four hours in an eight-hour day; is able to sit for about six hours in an eight-hour day; has no limitation in pushing and pulling; is limited to occasional postural maneuvers but should never climb ladders, ropes, or scaffolding; is limited to reaching overhead with his right upper extremity; must avoid concentrated exposure to extreme heat and cold temperatures, wetness, vibration, and hazards such as machinery and heights; is limited to simple, routine, repetitive tasks involving only simple work-related judgment; is limited to occasional interaction with the public, supervisors, and co-workers; and must avoid production rate pace work.

(R. at 18-19).

The ALJ determined that while Plaintiff could not perform any past relevant work, based upon testimony from a vocational expert, Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. at 22-23). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (R. at 24).

V.  **Standard of Review**

To be eligible for Social Security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir.1986). When

reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria set forth in the Listings; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). If the claimant is found to be unable to resume previous employment, the burden shifts to the Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he is able to perform substantial gainful activity in jobs in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir.1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g), 1383(c)(3); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir.1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. See 5 U.S.C. § 706. The District Court must then determine whether substantial evidence exists in the record to support the Commissioner's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir.2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v.*

*Shalala*, 55 F.3d 900, 901 (3d Cir.1995)(quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A District Court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the Court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D.Pa.1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis, *Chenery*, 332 U.S. at 196–197. Further, "even where this court acting *de novo* might have reached a different conclusion ... so long as the agency's fact finding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190–1091 (3d. Cir.1986).

## VI. Discussion

In support of his Motion for Summary Judgment, Plaintiff argues that the ALJ erred by: (1) finding that Plaintiff did not meet Listing Section 14.09 for Inflammatory Arthritis at Step 3; (2) making an adverse credibility finding for Plaintiff according to Social Security Ruling ("Ruling") 96-7p; (3) failing to make a credibility finding for Plaintiff's wife, Lisa Schade, or failing to find her testimony competent; (4) finding Plaintiff capable of light unskilled work; (5) failing to support his assessment of Plaintiff's RFC with the medical evidence; (6) failing to consider the impact of Plaintiff's use of a cane and need for bathroom usage on his working capabilities; (7) ignoring the vocational expert's response to the hypothetical questions that would result in Plaintiff being found disabled; and (8) not supporting his decision with

substantial evidence. (ECF No. 8 at 3-4, 12-18). The Commissioner counters that (1) the ALJ properly determined that Plaintiff's impairments were not per se disabling at Step 3; (2) the ALJ complied with the Regulations when evaluating Plaintiff's credibility, and substantial evidence supports the ALJ's analysis; (3) the ALJ adequately considered the hearing testimony of Plaintiff's wife; and (4) the ALJ's RFC assessment and hypothetical question to the VE captured all of Plaintiff's functional limitations that were credibly established in the evidence. (ECF No. 10 at 10-20). The Court agrees with the Commissioner.

A.  **Listing 14.09D, Inflammatory Arthritis**

Plaintiff first argues that the ALJ erred by finding that Plaintiff did not meet or medically equal Listing 14.09D, *Inflammatory Arthritis*, at Step 3 of his evaluation process. (ECF No. 8 at 12). In order to meet or medically equal Listing 14.09D, Plaintiff must prove repeated manifestations of inflammatory arthritis with at least two of the constitutional signs or symptoms (severe fatigue, fever, malaise, or involuntary weight loss) and a marked limitation in one of the following areas: activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence or pace. 20 C.F.R. pt. 404, subpt. P, app. 1 § 14.09D.

Plaintiff contends that the medical records showing Plaintiff's significant weight loss along with Dr. Groves' answers contained in the mental impairment questionnaire stating that Plaintiff had "weight change, excessive fatigue, anhedonia or pervasive loss of interest, social withdrawal or isolation and decreased energy" satisfy the requirement of proving at least two of the constitutional signs or symptoms in Listing 14.09D. (ECF No. 8 at 13 *citing* R. at 34-35, 242, 268, 374). Further, again relying on the opinion of Dr. Groves contained in the questionnaire form, Plaintiff asserts that he has established a marked limitation with respect to

maintaining social functioning. (ECF No. 8 *citing* R. at 371-381). This argument fails, however, because, as discussed more fully below in this opinion, the ALJ reasonably declined to afford Dr. Groves' opinion controlling weight, concluding it was "inconsistent with the other evidence in the record." (R. at 22). As such, by only relying on Dr. Groves' opinion, Plaintiff has failed to establish that he had at least two constitutional signs or symptoms,[8] and he also failed to show a marked limitation in one of the functional areas set forth in Listing 14.09D.

The ALJ determined that Plaintiff had no limitations in the area of activities of daily living, had mild limitations in the area of social functioning, and had mild limitations in the area of concentration, persistence, or pace. (R. at 17). The ALJ cited several reasons in each of these three areas to support his conclusion.[9] (*Id.*). Consequently, this conclusion is supported by substantial evidence and the ALJ did not err here.

**B.     Credibility Assessment of Plaintiff**

Plaintiff next asserts that the ALJ erred in assessing Plaintiff's credibility, relying on Ruling 96-7p. (ECF No. 8 at 14-16). When assessing a claimant's credibility regarding the intensity and persistence of his symptoms, an ALJ must compare the claimant's subjective allegations of pain with the objective medical evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c). An ALJ must consider all the evidence before him and "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Russo v. Astrue*, 421

---

[8] The Court notes that Plaintiff sufficiently established one constitutional sign/symptom by citing to the record regarding his involuntary weight loss.
[9] Plaintiff suggests that the ALJ committed error in evaluating these functional areas because "there is no mental, residual functional capacity assessment in the record to support the ALJ's functional limitation." (ECF No. 8 at 13-14). Such an assertion is without merit. *See* 20 C.F.R. § 404.1527(d)(2)("Although we consider opinions from medical sources on issues such as whether your impairments meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, . . .the final responsibility for deciding these issues is reserved to the Commissioner."); 20 C.F.R. § 416.927(d)(2)(providing the same). Moreover, the ALJ stated that he "considered the opinions from the state agency medical consultants" and noted that "no treating or examining medical source has stated the claimant has an impairment or combination of impairments that meets or equals the criteria of any listed impairment." (R. at 18).

9

F. App'x 184, 191 (3d Cir. 2011); *Burnett v. Comm'r of Soc. Sec.*, 220 F. 3d 112, 122 (3d Cir. 2000). Reviewing courts "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess the witness's demeanor." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

The ALJ thoroughly summarized Plaintiff's medical treatment records and activities of daily living, and noted that they are "inconsistent with an individual who has experienced debilitating symptoms." (R. at 19-21). Specifically, the ALJ noted that "in May 2010, the evidence shows that the claimant was reluctant to take medications and in June 2010 the claimant refused to take Humira, although he had been "advised multiple times by multiple physicians to start Humira." (R. at 21, 247). Ruling 96-7p provides that "the individual's statements may be less credible if…the medical reports or records show that the individual is not following the treatment prescribed and there are no good reasons for this failure." S.S.R. 96-7p, 1996 WL 374186, *7. "However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the claimant may provide." *Id.* Plaintiff has offered no such explanation.

In fact, Plaintiff reported to Dr. Sharan's office that Dr. Grotton told Plaintiff that he would not give Humira to his dog, but when Dr. Sharan's office contacted Dr. Grotton for verification, it became apparent that Dr. Grotton told Plaintiff he "needs" Humira. (R. at 247). Additionally, when questioned by the ALJ about his reluctance to take Humira, Plaintiff responded "No, I took it until I realized it wasn't working anymore – or, it wasn't working at all. And I told him that. I said it wasn't working. He said, you know, there was a good chance that it wouldn't work." (R. at 43). The ALJ pointed out, however, that "Dr. Aggarwal reported there

10

was definite improvement and the claimant's synovitis and ulcerative colitis was significantly improved on Humira." (R. at 21). In discussing Plaintiff's other medications, the ALJ noted that "the progress and treatment notes show the claimant reported side effects; however the evidence does not show that the claimant experiences significant side effects from his medications or that his medications have been frequently changed or the dosages altered due to side effects and/or ineffectiveness." (*Id.*). At the hearing, Plaintiff testified that he did not have side effects from his medications and his dosages had not recently been altered. (R. at 41). The ALJ also observed that while Plaintiff asserted he was experiencing chronic pains, "there is no evidence the claimant has been prescribed other pain and/or treatment modalities such as a Tens unit, back brace or assistive device for ambulation; and no medical source of record has referenced the claimant to a pain management clinic." (R. at 21).

When addressing Plaintiff's activities of daily living, the ALJ found that Plaintiff's work at his pressure washing company three to four days a week, among other things, demonstrated that he was not disabled. (R. at 21). Work done during the alleged disability period may show that the plaintiff can work at substantial gainful activity. 20 C.F.R. § 404.1571; s*ee also Russo v. Astrue,* 421 F. App'x. 184, 189 (3d Cir. 2011)(finding it notable that the claimant continued to work after her alleged onset of disability even though that work did not reach the level of substantial gainful activity). Importantly, the ALJ in this case determined that Plaintiff's earnings of $15,654 in 2010, which occurred after his alleged onset of disability, actually amounted to the level of substantial gainful activity. (R. at 16). As such, the ALJ appropriately considered this when evaluating Plaintiff's activities of daily living. The ALJ also listed several other examples of Plaintiff's activities of daily living contained in the record that are "inconsistent with an individual who has experienced debilitating symptoms." (R. at 21).

Substantial evidence supports the ALJ's determination that Plaintiff's "statements concerning his impairments and their impact on his ability to perform work activities are not fully credible and consistent with his activities of daily living, his medical history including infrequent and inconsistent treatment, his medication regimen, his work and earnings history, and the other evidence in the record." (R. at 22).

C.     **Credibility Assessment of Plaintiff's Wife**

Plaintiff, again relying on Ruling 96-7p, asserts that the ALJ erred because he did not make a credibility finding of Plaintiff's wife regarding her testimony about her husband's limitations. (ECF No. 8 at 15). In this case, however, a credibility assessment of Plaintiff's wife is unnecessary. Ruling 96-7p provides that the ALJ must consider the consistency of the claimant's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work. S.S.R. 96-7p, 1996 WL 374186, *6; *see also* 20 C.F.R. § 404.1513(d)(4)(in evaluating the severity of a claimant's impairment(s), the ALJ may consider other non-medical sources, such as testimony from a spouse).

In his written decision, the ALJ stated that "the claimant and Lisa Schade, the claimant's wife, both testified the claimant continues to experience limitations as a result of the claimant's alleged impairments." (R. at 19). As such, the ALJ sufficiently acknowledged and considered the consistency of the testimony provided by Plaintiff and Mrs. Schade, especially considering that Mrs. Schade's testimony was largely duplicative of Plaintiff's testimony. (R. at 31-62). Therefore, the ALJ's credibility assessment of Plaintiff was supported by substantial evidence notwithstanding the fact that Plaintiff's testimony was consistent with his wife's testimony, which the ALJ acknowledged.

**D.     RFC Assessment of Plaintiff**

**i.     Assessment of the Medical Opinions**

The ALJ properly evaluated the medical opinions contained in the record. If an ALJ does not give the treating physician's opinion controlling weight, then he is to consider the examining relationship, the treating relationship, supportability of the opinion afforded by medical evidence, consistency of opinion with the record as whole, specialization of the treating physician, and various other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). Whether a claimant is disabled is a determination that rests solely with the ALJ. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

The ALJ did not afford Dr. Groves' opinion controlling weight because she "only performed a 45 minute clinical evaluation" of Plaintiff before rendering her opinion. (R. at 22). Dr. Groves' opinion was contained in a mental impairment questionnaire, which was created and provided by Plaintiff's counsel. (R. at 371-381). The ALJ observed that Dr. Groves' "report did not show evidence of a mental status examination or any other clinical and objective findings." (R. at 22). Dr. Groves simply completed the form by filling in blanks and checking boxes, and did not provide a written report. (R. at 317-381). "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best" and if "unaccompanied by thorough written reports, their reliability is suspect." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (internal quotations omitted). The ALJ also stated that "the claimant's history of treatment and especially his lack of any mental health treatment is inconsistent with an individual experiencing totally debilitating symptomatology," and concluded that Dr. Groves' opinion was "inconsistent with the other evidence in the record." (R. at 22). A medical opinion is not entitled to any weight if unsupported by objective evidence in the medical record. *Plummer v. Apfel*, 186 F.3d 422, 430 (3d Cir. 1999)(citing *Jones v. Sullivan*,

954 F.2d 125, 129 (3d Cir.1991)). Accordingly, the ALJ did not err in deciding not to afford Dr. Groves' opinion controlling weight, as his decision was supported by substantial evidence.

Regarding the opinion of non-treating state agency physician Mary Ellen Wyszomierski, M.D., Plaintiff contends that Dr. Wyszomierski's findings were "consistent with sedentary level work, but not light level work," and therefore, "the record does not provide a basis for the ALJ's findings limiting Plaintiff's functions greater than those determined by Dr. Wyszomierski." (ECF No. 8 at 17). Plaintiff does not challenge Dr. Wyszomierski's opinion, but rather argues that the ALJ erred in deviating from it. The ALJ, however, actually adopted many of Dr. Wyszomierski's findings in his RFC assessment, including the portions that Plaintiff argues the ALJ did not follow.

A full range of "light work involves lifting no more than 20 pounds at a time with frequent[10] lifting or carrying of objects weighing up to ten pounds," and requires that a claimant is able to stand or walk, off and on, for a total of approximately six hours in an eight-hour day. 20 C.F.R. § 404.1567, 416.967; S.S.R. 83-10, 1983 WL 31251, *5-6. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally[11] lifting or carrying articles like docket files, ledgers, and small tools," and generally cannot require standing or walking for more than about two hours in an eight hour day. *Id.* Dr. Wyszomierski opined that Plaintiff is capable of frequently and occasionally lifting ten pounds, and standing or walking for at least two hours, but no more than four hours, in an eight-hour day. (R. at 348). The ALJ found that Plaintiff "is limited to lifting and carrying 10 pounds frequently and ten pounds occasionally" and "is limited to standing and walking for four hours in an eight hour day" in his RFC assessment of Plaintiff. (R. at 18). Thus, the ALJ's assessment of Plaintiff's RFC for lifting/carrying and

---

[10] "Frequent" is defined in Ruling 83-10 as occurring from one-third to two-thirds of the time.
[11] "Occasionally" is defined in Ruling 83-10 as occurring form very little to up to one-third of the time.

standing/walking was the same as Dr. Wyszomierski's opinion, which was, in essence, that Plaintiff is capable of more than sedentary work but less than a full range of light work. Consequently, Plaintiff's argument that the ALJ impermissibly strayed from Dr. Wyszomierski's opinion is simply factually incorrect.

ii.     **Plaintiff's Use of a Cane**

Plaintiff next argues that the ALJ erred by failing "to consider Plaintiff's use of a cane in his dominant hand." (ECF No. 8 at 17). At the administrative hearing, the ALJ noticed that Plaintiff was using a cane and specifically questioned him Plaintiff about his need to use it. (R. at 43). Plaintiff testified that he had been using the cane for about a year and a half, it was prescribed by Dr. Grotton,[12] and it helped him walk and stand. (*Id.*). Upon questioning from his attorney, Plaintiff stated that he used the cane in his dominant hand. (R. at 53). Plaintiff's attorney also questioned the vocational expert with respect to whether an individual needing to use a cane in the dominant hand would impact the jobs listed by the vocational expert. (R. at 68). Given that the ALJ specifically questioned Plaintiff about his use of the cane and also observed Plaintiff's attorney question both Plaintiff and the vocational expert about using a cane, it cannot be said that the ALJ "failed to consider" Plaintiff's use of a cane.

Moreover, aside from Plaintiff's own testimony, there is no evidence contained in the medical record from any of his treating physicians that Plaintiff needed to use a cane, or that he could not walk without one. *See Cardona v. Comm'r of Soc. Sec.*, 94 F. App'x 106, 107 (3d Cir. 2004)(substantial evidence supported the ALJ's findings when physical examinations showed that the plaintiff could walk without a cane despite having one in his hand). Further, "even where the medical evidence mentioned the claimant's use of a cane and a physician had indicated

---

[12] The hearing transcript actually says the cane was prescribed by "Dr. Gauturn," however, after review of the whole medical record along with the fact that Dr. Grotton was Plaintiff's PCP, the Court concludes that Plaintiff was referring to Dr. Grotton.

15

that the claimant needed to use a cane, such isolated notations are 'insufficient to support a finding that the [claimant's] cane was medically necessary.'" *Rivera v. Astrue*, 2009 WL 235353, *5 (E.D. Pa. 2009)(*citing Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002)). Here, nothing in Plaintiff's medical record indicates that his use of the cane was medically necessary. Accordingly, the ALJ did not err when he did not include a cane requirement in his RFC assessment of Plaintiff.

### iii. Plaintiff's Alleged Bathroom Requirements

Plaintiff also asserts that the ALJ failed to consider Plaintiff's "need to use the bathroom 7 or 8 times per day due to frequent diarrhea." (ECF No. 8 at 17). The medical records, however, provide that Humira "significantly improved" Plaintiff's ulcerative colitis. (R. at 323, 328). In fact, at Plaintiff's last visit with Dr. Aggarwal, Plaintiff reported that he was no longer having diarrhea. (R. at 328). The ALJ noted that Plaintiff's "ulcerative colitis was significantly improved on Humira." (R. at 20). Additionally, the ALJ asked the vocational expert a hypothetical question about whether an individual that needed "up to as many as eight bathroom breaks a day, lasting approximately 10 minutes" would not be employable. (R. at 66). Thus, the ALJ clearly considered Plaintiff's assertion that he needed to frequently use the bathroom, but ultimately decided that it was not fully credible. (R. at 19). Substantial evidence supports this conclusion.

### E. Hypothetical Questions Posed to the Vocational Expert

Finally, Plaintiff asserts that the ALJ erred by finding that Plaintiff was not disabled based upon the vocational expert's response to the hypothetical question involving the hypothetical individual's need to use the use bathroom eight times per day. (ECF No. 8 at 17-18). "[T]he ALJ must accurately convey to the vocational expert all of claimant's *credibly*

*established limitations.*" *Rutheford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)(citing and adding emphasis to *Plummer*, 186 F.3d at 431). Substantial evidence supports the ALJ's decision that Plaintiff's purported need to use the bathroom seven to eight times per day was not credibly established in the medical record. The ALJ asked the vocational expert a hypothetical question reflecting his assessment of Plaintiff's RFC, and the ALJ responded that jobs existed in significant numbers in the national economy for such an individual. Because the Court has already determined that the ALJ's RFC assessment of Plaintiff is supported by substantial evidence, this argument also fails.

**VII.    Conclusion**

Based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 7) is denied, and Defendant's Motion for Summary Judgment (ECF No. 9) is granted. An appropriate order follows.

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all counsel of record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES W. SCHADE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-1071 |
| | ) | |
| v. | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

AND NOW**,** this 29th day of January, 2014, after the Plaintiff, James W. Schade, filed an action in the above-captioned case, and after Motions for Summary Judgment (ECF No. 7) & (ECF No. 9) were filed by the parties,

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Plaintiff (ECF No. 7) is denied.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Defendant (ECF No. 9) is granted.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order a notice of appeal, as provided in Fed. R. App. P. 3, must be filed with the Clerk of Court, United States District Court, at 700 Grant Street, Room 3110, Pittsburgh, PA 15219, within thirty (3) days.

s/ Cynthia Reed Eddy<br>
Cynthia Reed Eddy<br>
United States Magistrate Judge

cc: all counsel of record